**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. _____

**HAYLEY CORIO,**

    **Plaintiff,**

**v.**

**TRI CITY CYCLE, INC,
A Colorado Corporation,**

    **Defendant.**

_____

**PLAINTIFF HAYLEY CORIO'S COMPLAINT AND JURY DEMAND**
_____

Plaintiff, Hayley Corio, through her counsel, the law firm of Benezra & Culver, P.C., for her Complaint and Jury Demand against Tri City Cycle, Inc. ("Tri City") alleges the following:

**I. INTRODUCTION**

1. Plaintiff Hayley Corio was subjected to sexual harassment, discriminated against because of her gender, and then terminated from her position with Tri City in retaliation for complaining about gender discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended.

## II. PARTIES

2.     Plaintiff Corio was a resident of the state of Colorado at the time her claims arose.  Ms. Corio was employed as the Marketing and Experience Manager for Tri City at the time of her termination on June 30, 2017.

3.     Defendant Tri City Cycle, Inc. (hereinafter "Tri City") is a corporation incorporated in the State of Colorado with its principal place of business in Colorado.

## III. JURISDICTION AND VENUE

4.     Jurisdiction is proper in this judicial district because Plaintiff Corio is alleging violations of her rights under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000(e).

5.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b).  A substantial part of the events or omissions giving rise to Plaintiff Corio's claims occurred within the jurisdiction of the United States District Court for the District of Colorado.

6.     Plaintiff Hayley Corio has complied with all administrative, jurisdictional, and legal prerequisites to the filing of this action.

## IV. GENERAL ALLEGATIONS

7.     Ms. Corio has a background in marketing and events.  She possesses a Masters of Education Degree in Instructional Design and has more than 20 years of experience in marketing and events.

8.     Ms. Corio was hired by Tri City to be its Marketing & Customer Experience Manager on July 6, 2015.

9. As the Marketing & Experience Manager, Ms. Corio was responsible for planning and coordinating general and special events, marketing, promoting vendor relations, developing community initiatives, and fostering cooperative programs such as corporate partnerships. She was also responsible for building customer relationships and resolving customer complaints. She was required to attend events sponsored by Tri City after hours. In order for her to accomplish this diverse list of responsibilities, she was required to have personal interaction with the two Sales Managers at Tri City. Additionally, she was also required to work closely with Mr. Brady Welton, the owner of Tri City, to achieve her duties, particularly her marketing related responsibilities. Ms. Corio met with Mr. Welton weekly in relation to her marketing related responsibilities.

10. Almost immediately after starting at Tri City, Ms. Corio observed that the atmosphere at Tri City was rife with inappropriate sexual comments. Although many of the male employees would participate in this behavior, the comments from one of the two sales managers, John Goddard, were particularly egregious and escalated as time went on. For example, Mr. Goddard made numerous sexually charged inquiries into Ms. Corio's sex life. These inquiries were routinely accompanied with a wink or a blown kiss. In addition to the inappropriate inquires, Mr. Goddard made repeated sexual advances towards Ms. Corio, including demands for kisses or sex.

11. The inappropriate sexual comments and behavior were so pervasive that Mr. Welton was, or should have been, aware of their existence. Tri City is a small business and Mr. Welton was very "hands on" and involved in nearly every sale. As a result, Mr. Welton observed the male employees huddled around a computer or phone

viewing videos or looking at images. Ms. Corio also observed Mr. Welton watching and laughing about inappropriate videos with Mr. Goddard and other employees. Additionally, because of the size of Tri City, Mr. Welton heard sexually charged comments from the male employees, including Mr. Goddard.

12. Ms. Corio repeatedly asked Mr. Goddard to refrain from his inappropriate behavior. She also tried ignoring him. Unfortunately, neither approached had any impact on the frequency of the comments. Because Ms. Corio was required to work closely with the sales managers to perform job responsibilities, she could not completely refrain from any and all contact with Mr. Goddard.

13. Despite the difficult environment, Ms. Corio performed her job responsibilities admirably and earned performance bonuses for all for quarters in 2016.

14. In October of 2016, Mr. Welton decided to remove Ms. Corio's performance based bonuses for 2017 and agreed to discuss a salary increase with her in order to make up for this lost compensation.

15. By December of 2016, the inappropriate and unwanted comments by Mr. Goddard escalated into videos and text messages. On one occasion in December of 2016, Mr. Goddard called Ms. Corio over to his desk and showed her a video of a bar tender stirring a drink with his penis. Ms. Corio expressed to Mr. Goddard that she never wanted to see anything like that again.

16. A few weeks after the bar tender video, Mr. Goddard attempted to show a video to Ms. Corio from his cell phone. Before she acquiesced to viewing request, Ms. Corio said, "do not show me any more penis pictures." Mr. Goddard assured her the

video was not inappropriate.  Of course, this was a lie.  The video displayed a woman being slapped in the face with a penis.  Ms. Corio was again disgusted and outraged and loudly told Mr. Goddard that his behavior was inappropriate.

17. Despite Ms. Corio's repeated rebuffs, Mr. Goddard's inappropriate behavior did not relent.  Within the first two weeks of January of 2017, Mr. Goddard sent Ms. Corio a text message consisting of a drawing of a penis.  Then, on January 18, 2017, Mr. Goddard sent her text message with another drawing.  This time, the drawing consisted of a penis ejaculating on the face of a blond woman.  This image was particularly reprehensible because Ms. Corio has blonde hair.

18. Ms. Corio confided in Jessica Whitney, another female employee at Tri City, regarding the inappropriate messages.  In response, Ms. Whitney told Ms. Corio that Mr. Goddard sends those sorts of messages to her "all of the time."

19. Upon information and belief, Mr. Welton received and/or viewed some of the inappropriate videos or text messages that Mr. Goddard forced upon Ms. Corio.

20. On January 23, 2017, Ms. Corio formally reported Mr. Goddard's behavior to Mr. Welton.  No investigation or discipline occurred as a result of this report.

21. After reporting the report, Ms. Corio was subjected to retaliation.  First, Mr. Goddard refused to speak to Ms. Corio.  Because Ms. Corio's job responsibilities required daily interaction with the Sales Managers, Mr. Goddard's behavior made Ms. Corio's job incredibly difficult.

22. Additionally, following the report, Mr. Welton discontinued his weekly meetings with Ms. Corio, and instead met with her approximately once every two

months and only when completely necessary.  Moreover, Mr. Welton did not give Ms. Corio a raise, effectively decreasing her projected total compensation for 2017.

23.    On approximately May 19, 2017, Ms. Corio filed a charge of sexual harassment/gender discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC").

24.    After her charge was filed, Mr. Welton's hostile treatment of Ms. Corio escalated.

25.    On May 24, 2017, Mr. Welton called Ms. Corio into his office and told her that he was disappointed that she filed a charge with the EEOC.  In this conversation, Mr. Welton acknowledged that nothing in the substance of the charge was untrue or misleading.  Instead, he told Ms. Corio that "if [she] was so unhappy [at Tri City, she] should just leave."  In that same conversation, Mr. Welton said that he "can't work like this" and reiterated that if Ms. Corio didn't like working there, she should just leave.

26.    On May 25, 2017, Mr. Welton called a mandatory meeting for the entire company.  At this meeting, he said that things in the store have been weird recently for one reason only, an obvious reference to Ms. Corio's complaint.  Mr. Welton then proceeded to tell everyone that they should be careful with what they were saying or showing each other because "you never know who is around the corner listening."  Mr. Welton also reiterated the sentiment that if someone isn't happy working at Tri City, that person should just leave.  Significantly, at this meeting, rather than condemning the inappropriate behavior that had transpired at Tri City, he stated that it was important for

people to be able to joke around and have fun and that if some did not like it, Tri City really isn't the place for them to work.

27. On June 9, 2017, Ms. Corio received a complaint from the Better Business Bureau ("BBB"). As the Customer Experience Manager, one of her responsibilities for the previous two years was resolving customer complaints – exactly like the one received from the BBB. However, in this case, for the first time during her tenure at Tri City, Mr. Welton stripped her of this responsibility and assigned the complaint to someone else for resolution.

28. On June 16, 2017, Mr. Welton called a manager meeting in his office to which Ms. Corio was neither informed nor invited. Prior to this meeting, Ms. Corio had attended every manager meeting called during her tenure at Tri City. Moreover, Ms. Corio was the only manager from Tri City who was not in attendance at this meeting.

29. On June 19, 2017, Ms. Corio received an email from the Tri City controller Christina Medina asking for her to send her schedule from the previous week. Specifically the email request said "I show you were not here on Saturday and only working two days last week is this correct?" This request was strange because prior to filing the charge of discrimination, Ms. Corio's schedule was never questioned or scrutinized. Additionally, for well over a year she had worked every other Saturday, and, the Saturday Ms. Medina asked about, was one for which Ms. Corio was scheduled to be off. Furthermore, because Ms. Corio worked many night and weekend events year round, it was understood that she would flex off time during the regular work week to make up for the after hour events that she worked. These two practices

were both well known by Tri City and neither of these practices was questioned prior to her filing the charge of discrimination.

30. On June 30, 2017, Mr. Welton called Ms. Corio into his office and terminated her. During this brief termination meeting, he acknowledged that she had done everything he ever asked of her (that she "killed it"), but that, he had to make changes. Mr. Welton said that Ms. Corio did not have his back and that he just can't work "like this." Additionally, in this meeting, he agreed to pay Ms. Corio for two weeks of vacation time that was forthcoming so long as she would provide him with the passwords to all of the Tri City accounts that she managed. Ms. Corio provided Mr. Welton with the passwords to all of the Tri City accounts that she managed.

31. Ms. Corio's termination was effective immediately. On approximately August 16, 2017, Ms. Corio made a formal written demand for payment of these wages. Tri City did not pay Ms. Corio for these wages.

## V.  CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
### Sexual Harassment in Violation of Title VII

32. Plaintiff hereby incorporates Paragraphs 1 through 31 as though fully alleged herein.

33. Ms. Corio was subjected to inappropriate sexual behavior at Tri City.

34. The inappropriate sexual behavior was unwelcome and offensive.

35. The inappropriate sexual behavior was directed at Ms. Corio because of her gender.

36. The inappropriate sexual behavior was sufficiently severe and pervasive to alter the conditions of Ms. Corio's employment by creating a hostile work environment.

37. Mr. Welton knew or should have known of the inappropriate sexual behavior and failed to take prompt and corrective remedial action.

38. Defendant's actions were willful and wanton and done with reckless disregard for Ms. Corio's protected rights.

39. As a result of Defendant's behavior, Ms. Corio has suffered damages.

## SECOND CLAIM FOR RELIEF
### Sex Discrimination in Violation of Title VII

40. Plaintiff hereby incorporates Paragraphs 1 through 39 as though fully alleged herein.

41. As a woman, Ms. Corio is a member of a protected class.

42. During her employment Ms. Corio was subjected to gender discrimination including being subjected to a hostile work environment and to adverse actions, including but not limited to, being stripped of job responsibilities, a decrease in compensation, and being terminated.

43. Ms. Corio was treated less favorably than her male counterparts.

44. The hostile work environment and adverse actions taken against Ms. Corio were motivated by her gender.

45. Defendant's actions as described herein were willful and wanton and done with reckless disregard for Ms. Corio's protected rights.

46. As a result of Defendant's discriminatory conduct, Ms. Corio has suffered damages.

### THIRD CLAIM FOR RELIEF
### Retaliation in Violation of Title VII

47. Plaintiff hereby incorporates Paragraphs 1 through 46 as though fully alleged herein.

48. Ms. Corio engaged in protected activity by complaining of sexual harassment and gender discrimination and retaliation.

49. Ms. Corio was subjected to adverse actions, including being subjected to a hostile work environment, being stripped of job responsibilities, and being terminated.

50. Ms. Corio was treated less favorably than employees who did not engage in protected activity.

51. The adverse actions taken against Ms. Corio were motivated by her having engaged in protected activity.

52. Defendant's actions as described herein were willful and wanton and done with reckless disregard for Ms. Corio's protected rights.

53. As a result of Defendant's retaliatory conduct, Ms. Corio has suffered damages.

### FOURTH CLAIM FOR RELIEF
### Breach of Contract

54. Plaintiff hereby incorporates Paragraphs 1 through 53 as though fully alleged herein.

55. Ms. Corio and Tri City entered into a contract for which each party received valuable consideration.

56. Under the terms of the contract, Tri City would pay Ms. Corio for two weeks of vacation time in exchange for Ms. Corio providing Tri City passwords and account details for all of the Tri City accounts that she managed.

57. Ms. Corio fulfilled her obligation under the contract by providing the account details for all the Tri City accounts she managed.

58. Tri City did not pay Ms. Corio for two weeks of vacation time and thus did not fulfill its obligations under the contact.

59. As a result of Tri City's failure to fulfill its obligations under the contract, Ms. Corio has suffered damages.

WHEREFORE Plaintiff Corio respectfully requests that this Court enter judgment in her favor and against the Defendants an award

(a) injunctive and declaratory relief;

(b) damages in such an amount as shall be proven at trial for back-pay and damages including lost benefits, wages, promotions, tenure, seniority, other employment opportunities, and contract damages;

(c) an order for the Defendant to reinstate Ms. Corio or in the alternative to pay front-pay and benefits, including lost benefits in an appropriate amount;

(d) compensatory damages, including emotional distress as allowed by law;

(e) punitive damages under Title VII;

(f) attorney's fees and costs as provided for by law;

    (g)    pre- and post-judgment interest, costs, expert witness fees; and

    (h)    such other relief as the Court deems just and proper.

### PLAINTIFF CORIO REQUESTS A TRIAL BY JURY ON ALL ISSUES SO TRIABLE.

Respectfully submitted this 12th day of February, 2018.

**BENEZRA & CULVER, P.C.**

*s/ Seth J. Benezra*
John A. Culver, Esq.
Seth J. Benezra, Esq.
Adam W. Ray, Esq.
633 17th St., Suite 1450
Denver, CO 80202
Telephone: (303) 716-0254
FAX: (303) 716-0327
sjbenezra@bc-law.com
jaculver@bc-law.com
awray@bc-law.com
Attorneys for Plaintiff

<u>Plaintiff's Address</u>
123 Whitney Bay
Windsor, CO 80550