IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Raymond P. Moore

Civil Action No. 18-cv-00341-RM-SKC

HAYLEY CORIO,

    Plaintiff,

v.

TRI CITY CYCLE, INC,
a Colorado Corporation,

    Defendant.

___

**ORDER**
___

Plaintiff Hayley Corio ("Ms. Corio" or "Plaintiff") was terminated from her employment from Defendant Tri City Cycle, Inc. ("Tri City" of "Defendant"), a motorcycle dealership, after she complained of sexual harassment and filed a charge with the Equal Employment Opportunity Commission ("EEOC"). This lawsuit followed. The case is now before the Court on Tri City's Motion for Summary Judgment ("Motion") (ECF No. 29) seeking judgment as a matter of law in its favor on all of Ms. Corio's claims. Ms. Corio filed a response in opposition; Tri City filed a reply. The matter is ripe for resolution.

    **I.    FACTUAL AND PROCEDURAL BACKGROUND**

The Court considers the facts in the light most favorable to Plaintiff, as the non-movant, "unless contradicted by the record." *DePaula v. Easter Seals El Mirador*, 859 F.3d 957 (10th Cir. 2017) (citing *Birch v. Polaris Indus., Inc.*, 812 F.3d 1238, 1251 (10th Cir. 2015)).

***The Alleged Sexual Activities During Ms. Corio's Employment.*** Tri City is a motorcycle distributorship.[1] It has about 25-30 employees. On or about July 18, 2015, Tri City hired Ms. Corio to be the marketing manager.[2] Among Plaintiff's co-workers was an employee named John Goddard, one of two sales managers. Mr. Goddard was already employed by Tri City, and had been for several years, when Ms. Corio started her employment. The other sales manager was David Wagner.

According to Ms. Corio, at the dealership, "[t]here was always teasing and, like, flirting with everybody in the dealership in a friendly, light-hearted way." (ECF No. 30-2, p. 62.) She testified "It's the culture…of the industry. It's babes and bikers, and there's always a light amount of profanity used." (ECF No. 30-2, p. 63.) There was also a certain level of acceptance of conduct, such as a bikini bike wash, which Ms. Corio did not find offensive. (ECF No. 30-2, p. 63.)

At first, Ms. Corio and Mr. Goddard apparently got along well enough. Whether that was true thereafter is disputed. Ms. Corio testified that in or about June 2016 Mr. Goddard's conduct of sexually inappropriate behavior "ramped up." Mr. Goddard allegedly made sexually inappropriate statements to her, showed her two inappropriate sexually charged videos, sent her inappropriate sexual text messages, and watched inappropriate videos at his desk with other employees. He also directed some of this conduct toward other female employees. Ms. Corio testified she found this all offensive and told Mr. Goddard this was unacceptable, e.g., telling Mr. Goddard "That's disgusting" or "Don't ever show me that shit again." (ECF No. 30-2, pp. 61, 90.) Mr. Goddard admits he sent Ms. Corio some texts and made some comments to Ms. Corio but, contrary to Ms. Corio's testimony, testified they were friends and that she never objected or

---

[1] Tri City may also sell other motorized vehicles, such as ATVs, but that is irrelevant to the Motion.
[2] Ms. Corio's exact title is not entirely clear, but irrelevant.

indicated she was offended.[3] Tri City presented evidence that Ms. Corio engaged in some conduct which may be deemed sexually inappropriate. Indeed, there is testimony that Mr. Goddard *and* Ms. Corio engaged in inappropriate conduct.

Sometime before January 23, 2017, Mr. Goddard sent Ms. Corio two text messages involving a penis. Ms. Corio said she took offense to the texts and showed one to Mr. Wagner. Mr. Wagner told Tri City's owner, Brady Welton, about the text message on Monday, January 23, 2017. Mr. Welton, along with the human resources manager Christina Traw,[4] investigated. It was Ms. Corio's day off, so Mr. Welton called Ms. Corio at home about the incident. About four days later, Tri City disciplined Mr. Goddard. Thereafter, Mr. Goddard ceased all behavior toward Ms. Corio which she deemed inappropriate. Mr. Goddard, however, did not cease such behavior toward others.

According to Ms. Corio, there were still inappropriate comments and videos. In other words, Ms. Corio contends the culture did not change. For example, Mr. Goddard wrote a note for sales spiffs, including a spiff of $50 to "whoever sells to the hottest customer." (ECF No. 30-2.) The parties' interactions, however, are disputed. Ms. Corio contends that Mr. Goddard became "very cold and standoffish" when she came back to work on Tuesday, January 24 (ECF No. 30-2, p. 102), and that Mr. Welton, with whom she used to have regular meetings, became distant. Tri City provides evidence to the contrary.

In May 2017, Ms. Corio filed a discrimination charge with the EEOC. By letter from Ms. Corio's counsel, Tri City was notified of the EEOC charge on or about May 20, 2017. Thereafter, on May 23, Ms. Corio advised Mr. Welton that she would "prefer" to communicate

---

[3] As Mr. Welton testified, there is a lot of "she said" versus "he said" concerning what was said, who was or was not offended, and the like. For example, Mr. Goddard testified Ms. Corio invited him to her wedding in October 2017; she claims she did not.
[4] Formerly Christina Medina and, before that, Christina Smith.

3

with him regarding work matters via email or text; all other matters were to be directed through her lawyer. Tri City viewed Ms. Corio's "preference" as a demand; Ms. Corio viewed it as a request.

On May 25, 2017, Mr. Welton held a storewide meeting to discuss sexual harassment in the workplace.

***Ms. Corio's Alleged Requests for a Raise.*** Meanwhile, Ms. Corio apparently had an issue with her compensation. Ms. Corio was paid an annual salary of $50,000 plus capped bonuses based on the performance of Tri City. At some point around mid-year 2016, Ms. Corio began asking Mr. Welton (more than once) about a change to her pay structure to straight salary of about $61,000. (*See* ECF No. 29-2, pp. 129-130.) There is a factual dispute over whether, in late 2016, Mr. Welton told Ms. Corio that he would be eliminating her quarterly bonuses and would adjust her salary. Ms. Corio never received an increase in salary. There is a factual dispute as to whether and, if so, when a decision was made not to give Ms. Corio a raise.

***Ms. Corio's Termination from Employment, Followed by Mr. Goddard's Termination from Employment.*** On June 30, 2017, Tri City terminated Ms. Corio's employment. At the time she was terminated, Ms. Curio asked Mr. Welton about vacation time she would have been entitled to in a few weeks if she had not been terminated. Mr. Welton offered to pay Ms. Corio the vacation pay in exchange for her providing Tri City with a list of account names and passwords for Tri City accounts. Ms. Corio provided this information on July 4, 2017, but Tri City never paid her the vacation pay.

The parties dispute why Ms. Curio was terminated. Ms. Curio contends it was in retaliation for complaining about and filing a complaint with the EEOC about the sexual harassment. Tri City contends it was for several reasons, including Ms. Corio's subordination,

failure to show up for work, and negative attitude.

In or about late June 2017, Mr. Goddard posted sexually inappropriate materials on his Snapchat outside of work hours. An employee from a business next to Tri City saw it and told her employer; the employer then reported it to Tri City. After investigating the matter, Tri City terminated Mr. Goddard's employment.[5]

***Ms. Corio's Lawsuit.*** On February 12, 2018, Plaintiff filed this lawsuit. She asserts three claims for relief under Title VII of the Civil Rights Act of 1964, and one claim for breach of contract. She also seeks punitive damages.

**II. STANDARD OF REVIEW**

Summary judgment is appropriate only if there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Henderson v. Inter-Chem Coal Co., Inc.*, 41 F.3d 567, 569–70 (10th Cir. 1994). Whether there is a genuine dispute as to a material fact depends upon whether the evidence presents a sufficient disagreement to require submission to a jury or is so one-sided that one party must prevail as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986); *Stone v. Autoliv ASP, Inc.*, 210 F.3d 1132, 1136 (10th Cir. 2000); *Carey v. United States Postal Serv.*, 812 F.2d 621, 623 (10th Cir. 1987). Once the moving party meets its initial burden of demonstrating an absence of a genuine dispute of material fact, the burden then shifts to the nonmoving party to demonstrate the existence of a genuine dispute of material fact to be resolved at trial. *See 1-800-Contacts, Inc. v. Lens.com, Inc.*, 722 F.3d 1229, 1242 (10th Cir. 2013) (citation omitted). "The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary

---

[5] This date is unclear. There is evidence to suggest this may have been in July 2017 as, according to Ms. Corio, the Snapchat occurred on or around June 23, 2017. (ECF No. 30-2, pp. 224-225.)

5

judgment; the requirement is that there be no genuine issue of material fact." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (citation omitted). The facts, however, must be considered in the light most favorable to the nonmoving party. *Cillo v. City of Greenwood Vill.*, 739 F.3d 451, 461 (10th Cir. 2013) (citations omitted).

## III. ANALYSIS

### A. Sexual Harassment – Hostile Work Environment

Ms. Corio claims she was subjected to sexual harassment in the work place by Mr. Goddard and Tri City failed to act.

Sexual harassment in the workplace is a form of sex discrimination prohibited under Title VII. *Kramer v. Wasatch County Sheriff's Office*, 743 F.3d 726, 737 (10th Cir. 2014). It is prohibited "to the extent that the harassment creates a hostile work environment." *Fassbender v. Correct Care Solutions, LLC*, 890 F.3d 875, 891 (10th Cir. 2018). A hostile work environment exists where "the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Fassbender*, 890 F.3d at 891 (quotation marks and citations omitted). To establish this claim a plaintiff must prove: "(1) she is a member of a protected group; (2) she was subject to unwelcome harassment; (3) the harassment was based on sex; and (4) due to the harassment's severity or pervasiveness, the harassment altered a term, condition, or privilege of the plaintiff's employment and created an abusive working environment." *Harsco Corp. v. Renner*, 475 F.3d 1179, 1186 (10th Cir. 2007) (quotation marks, brackets, and citation omitted). "Isolated incidents (unless extremely serious)" will not suffice. *Fassbender*, 890 F.3d at 891.

In determining whether a hostile work environment exists, the court examines an objective and subject component, asking "whether the plaintiff was offended by the work environment and whether a reasonable person would likewise be offended." *Hernandez v. Valley View Hosp. Ass'n,* 684 F.3d 950 (10th Cir. 2012) (quotation marks and citation omitted). The plaintiff must prove both. *Id.*

In assessing the objective severity of the harassment, the court considers "such factors as the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance. … The severity and pervasiveness evaluation of a hostile work environment claim is particularly unsuited for summary judgment because it is quintessentially a question of fact." *Id.* (quotation marks, citations, and brackets omitted). *See also Morris v. City of Colo. Springs*, 666 F.3d 654, 664 (10th Cir. 2012) (same). The "objective inquiry requires careful consideration of the social context in which particular behavior occurs and is experienced by its target. … Conduct which is considered normal and appropriate in one setting may be deemed abusive or hostile in another." *Morris*, 666 F.3d at 664 (quotation marks and citation omitted).

As for subjective severity, "'if the victim does not subjectively perceive the environment to be abusive, the conduct has not actually altered the conditions of the victim's employment, and there is no Title VII violation.'" *Morris*, 666 F.3d at 665 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21–22 (1993)). The employee, however, need not "show that the discriminatorily abusive work environment seriously affected her psychological well-being or that it tangibly impaired her work performance." *Morris*, 666 F.3d at 665 (quotation marks and citation omitted).

Where an employee is allegedly harassed by a co-worker rather than a supervisor, an employer is liable for the co-worker's sexual harassment "'if the employer was negligent with respect to the offensive behavior.'" *Kramer*, 743 F.3d at 737 (quoting *Vance v. Ball State Univ.*, 570 U.S. 421, 427 (2013)). This requires a plaintiff to show the employer "had actual or constructive notice of the harassment and negligently failed to remedy or prevent it." *Kramer*, 743 F.3d at 755. Constructive notice may be found where there is pervasive sexual harassment, but "only when the incidents are 'so egregious, numerous, and concentrated as to add up to a campaign of harassment that the employer will be culpable for failure to discover what is going on.'" *Kramer,* 743 F.3d at 757 (quoting *Baker v. Weyerhaeuser Co.*, 903 F.2d 1342, 1346 (10th Cir. 1990)). "[T]he level of pervasiveness[, however,] must exceed that required to make out a prima facie hostile workplace case and the plaintiff must point to specific facts to support such a finding of pervasiveness-plus." *Kramer*, 743 F.3d at 757. And, "[a]n 'employer's liability for allowing a sexually hostile work environment after it is reported to the employer by the employee arises only if the employer fails to take adequate remedial and preventative responses to any actually or constructively known harassment.'" *Bertsch v. Overstock.com*, 684 F.3d 1023, 1028 (10th Cir. 2012) (quoting *Holmes v. Utah, Dep't. of Workforce Servs.*, 483 F.3d 1057, 1069 (10th Cir. 2007)); *Carrera v. Tyson Foods, Inc.*, 449 F. App'x 753, 754 (10th Cir. 2011) (employer absolved of liability "if it takes remedial and preventative action reasonably calculated to end the harassment" (quotation marks and citation omitted)). A "stoppage of the harassment by the disciplined perpetrator evidences effectiveness." *Bertsch*, 684 F.3d at 1028 (quotation marks and citation omitted).

In this case, Tri City argues that Ms. Corio cannot demonstrate a triable issue of fact that (1) the conduct she complained of was sufficiently severe or pervasive to alter the conditions of

her employment and (2) that Tri City has any liability because it acted when Ms. Corio reported the January 2017 and any harassment by Mr. Goddard against Mr. Corio stopped. In response, Ms. Corio contends (1) Mr. Welton and Ms. Traw had actual and constructive notice of Mr. Goddard's behavior toward Ms. Corio and other employees prior to Ms. Corio's complaint, and (2) that Mr. Goddard's behavior was severe and pervasive. The Court finds, based on the record, there are genuine issues of material fact as to whether Mr. Goddard's alleged sexual harassment was sufficiently pervasive or severe so as to alter the terms and conditions of Ms. Corio's work environment.

There is no "mathematical precise test" for a hostile work environment claim. *Lounds v. Lincare, Inc.*, 812 F.3d 1208, 1222 (10th Cir. 2015) (quotation marks and citation omitted). Viewed in a light most favorable to Ms. Corio, and considering the totality of the circumstances, Ms. Corio was required to work frequently with Mr. Goddard. And, during such interactions, Mr. Goddard engaged in much more than a few isolated sexually explicit actions from mid-June 2016 until January 2017. For example, according to Ms. Corio, Mr. Goddard made comments weekly and he made at least 30 comments, many of which she specifically testified about. Comments such as "Does your husband make you scream? Because I can make you scream." and "You don't look very tired. Your husband must not have made you come very hard. I can make you come hard." (ECF No. 30-2, pp. 60-61.) Similarly, in addition to the January 2017 text messages with images of a penis, on separate occasions, Mr. Goddard showed Ms. Corio videos of a bartender stirring a drink with his penis and of a woman being slapped in the face with a penis. Accordingly, the Court discerns from the record a genuine dispute of material fact as to whether the alleged sexual harassment was pervasive or severe.

The existence of disputed material facts holds true, in part, for Tri City's argument that it acted promptly and that the harassment ceased. The Court finds there are genuine issues of material fact regarding whether Tri City had actual or constructive notice of Mr. Goddard's alleged conduct *prior* to Ms. Corio's January 2017 complaint and failed to act. For example, there is testimony that other employees were also aware of Mr. Goddard's comments, text messages, and/or computer use to view sexually related images and that Mr. Welton would come on the sales floor where such alleged sexual harassment occurred.[6] *See Harsco Corp.*, 475 F.3d at 1188 (recognizing that pervasiveness of sexual harassment can lead to an inference of knowledge).

The fact that Mr. Goddard no longer directed his alleged sexual harassment at Ms. Corio *after* Tri City reprimanded Mr. Goddard does, however, impact the extent of Tri City's liability in this case. Ms. Corio relies on the alleged harassment of *others* after her complaint to bootstrap her claim of continuing harassment of *her* – and continuing liability of Tri City – after her complaint. In doing so, Ms. Corio relies on *Hicks v. Gates Rubber Co.*, 833 F.2d 1406 (10th Cir. 1987). *Hicks*, *supra*, did state, in dicta, that "'a woman who has never herself been the object of harassment may have a Title VII claim if she were forced to work in an atmosphere where such harassment was pervasive." *Hicks*, 833 F.2d at 1416 (quoting *Vinson v. Taylor*, 753 F.2d 141 (D.C. Cir. 1985), *aff'd in part and rev'd in part on other grounds*, 477 U.S. 57 (1986)). And, in *Hirase-Doi v. U.S. West Commun.*, 61 F.3d 777, 782 (10th Cir. 1995), *abrogated on other grounds by Burlington Indus. v. Ellerth*, 524 U.S. 742 (1998) and *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998), the *Hirase-Doi* Court found it need not reach issue of whether *Hicks*

---

[6] There is no direct evidence that Mr. Welton was on the sales floor or around *when* such alleged harassment occurred.

required at least some evidence of hostility directed toward plaintiff. The Court finds it also does not need to do so here.

Even if the Court assumes, without deciding, that a plaintiff may rely solely on allegedly sexually harassing conduct toward others to support a claim of hostile work environment as to her, the Court finds no liability on the part of Tri City after Ms. Corio complained. Here, the undisputed material facts show Mr. Goddard never engaged in the conduct complained of again toward Ms. Corio. And, as Tri City argues, Ms. Corio never complained again to Tri City about any sexual harassment or hostile work environment based on sex, nor is there evidence that anyone else did. Ms. Corio filed an amended charge of discrimination after her January 2017 complaint, but she did not complain of any continuing sexual harassment which *affected her*. Instead, Ms. Corio indicated in a footnote that Mr. Goddard's conduct allegedly continued toward others. Based on the record, the Court is unable to conclude that a reasonable juror could find that, after she complained in January 2017, Ms. Corio's workplace was permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of her employment.

Based on the foregoing, Tri City's motion for summary judgment on Ms. Corio's first claim is granted as to any allegations after January 23, 2017 but denied as to any allegations on or before January 23, 2017.

### B. Sex Discrimination

Ms. Corio alleges she was "stripped" of responsibilities, received a decrease in compensation, and terminated due to her gender. She claims she was treated differently than her male counterparts who complained of discrimination, i.e., disparate treatment.

To survive summary judgment on a claim of sex discrimination "plaintiff must present

11

either direct evidence of discrimination or indirect evidence that satisfies the burden-shifting framework" under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Bekkem v. Wilkie*, 915 F.3d 1258, 1267 (10th Cir. 2019) (citing *Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir. 2012)). Under the indirect evidence three-step framework, a plaintiff must first establish a prima facie case. If the plaintiff does so, the burden of production (not persuasion) then shifts to the defendant employer "to offer a legitimate nondiscriminatory reason for its employment decision." *Wilkie*, 915 F.3d at 1267 (quotation marks and citation omitted); *Fassbender*, 890 F.3d at 884 (burden of production). This is an "'exceedingly light burden.'" *Wilkie*, 915 F.3d at 1268 (quoting *Montes v. Vail Clinic, Inc.*, 497 F.3d 1160, 1173 (10th Cir. 2007)).

"If the employer [meets its burden], the burden then reverts to the plaintiff to show that there is a genuine dispute of material fact as to whether the employer's proffered reason for the challenged action is pretextual—i.e., unworthy of belief." *Wilkie*, 915 F.3d at 1268 (quotation marks and citation omitted). To meet this third stage burden, a plaintiff must show pretext: that the employer's proffered reasons "'were so incoherent, weak, inconsistent, or contradictory that a rational factfinder could conclude the reasons were unworthy of belief.'" *Wilkie*, 915 F.3d at 1268 (quoting *Young v. Dillon Cos.*, 468 F.3d 1243, 1250 (10th Cir. 2006)). A plaintiff's "'[m]ere conjecture that the employer's explanation is a pretext for intentional discrimination is an insufficient basis for denial of summary judgment.'" *Wilkie*, 915 F.3d at 1268 (quoting *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir. 1997)). In determining whether a plaintiff's burden has been met, the court "consider[s] the evidence of pretext in its totality," *Fassbender*, 890 F.3d at 884, and as they appeared to the decision-maker, *Bennett*, 792 F.3d at 1268.

Tri City asserts Ms. Corio fails to meet her burden of establishing a prima facie case of disparate treatment. To do so, Ms. Corio must present evidence that (1) she belongs to a protected class; (2) she suffered an adverse employment action; and (3) the adverse action occurred under circumstances giving rise to an inference of discrimination. *Luster v. Vilsack*, 667 F.3d 1089, 1095 (10th Cir. 2011). At issue are the second and third factors.

Ms. Corio claims three adverse employment actions: being "stripped" of job responsibilities, a decrease in compensation, and termination. "An adverse employment action is a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits. … A mere inconvenience or an alteration of job responsibilities does not qualify as an adverse action." *Hiatt v. Colorado Seminary*, 858 F.3d 1307, 1316 (10th Cir. 2017) (quotation marks, citations, and brackets omitted). The Court agrees with Tri City that Ms. Corio fails to show she was stripped of her responsibilities.

Ms. Corio's evidence falls far short of showing a significant alteration of any job responsibilities. On the contrary, Ms. Corio testified that she was in charge of the "majority of customer issues" but that, in one instance, Mr. Welton said that he would handle a consumer complaint. (ECF No. 30-2, pp. 173-74.) Ms. Corio presents no evidence this responsibility was taken away from her, or in any other way reduced. Similarly, Ms. Corio testified that she and Mr. Welton used to meet weekly but then, after her complaint in January 2017, they met less frequently. But, Ms. Corio presents no evidence that this changed her job responsibilities, e.g., that she was no longer performing her marketing tasks or that they were given away to someone else. Finally, Ms. Corio complains of one meeting to which she was allegedly not invited but again fails to show how this impacted her responsibilities, if at all. In summary, no rational jury

13

could infer from this evidence that Ms. Corio suffered an adverse employment action based on allegations of any change in job responsibilities.

Ms. Corio's allegation of a decrease in salary similarly fails, albeit for a different reason. There are genuine issues of material fact as to whether Tri City eliminated Ms. Corio's bonuses without increasing her salary, resulting in a decrease in salary. Ms. Corio testified Mr. Welton told her he was doing so, which Mr. Welton denied. And, Ms. Corio testified that after she filed her complaint, Mr. Welton stopped discussing any increase in salary with her. The problem, however, is Ms. Corio's failure to present any evidence concerning any similarly situated male employees. Ms. Corio contends male employees were treated differently, but such bare allegation is insufficient. In the absence of any evidence suggesting she was subjected to disparate treatment as compared to any male employees who allegedly complained about Mr. Goddard's conduct, summary judgment is warranted. In other words, this claim cannot stand where there is a lack of any evidence that the alleged decrease in compensation was due to her gender.

As for Ms. Corio's last adverse condition complained of – her termination – the Court finds Ms. Corio has presented insufficient evidence to infer that she was terminated due to her gender. In her response brief, Ms. Corio refers the Court to Section C.1 but that section argues Mr. Goddard's conduct was severe and pervasive. Similarly, Ms. Corio mentions an alleged decrease in job responsibilities and refers the Court to paragraph 73 of her facts. That paragraph states "Mr. Welton knew of Mr. Goddard's inappropriate behavior prior to Ms. Corio's January 2017 complaint." Such arguments and "facts," however, fail to show that Ms. Corio's termination was based on her gender.

In summary, Ms. Corio fails to meet her burden of establishing a triable issue of material

fact or to demonstrate that Tri City is not entitled to judgment as a matter of law on her claim for sex discrimination.

**C. Retaliation**

Ms. Corio alleges Tri City terminated[7] her in retaliation for complaining of sexual harassment, sex discrimination, and retaliation. A claim of Title VII retaliation may also be demonstrated by direct evidence or under the *McDonnell Douglas* framework discussed above. *Wilkie*, 915 F.3d at 1267. The parties apply the *McDonnell Douglas* framework[8] in their papers. Under this framework, a plaintiff must establish a prima facie case of retaliation; if the plaintiff does so, the burden then shifts to the defendant to provide a legitimate, non-discriminatory rationale for the adverse employment action; if the defendant does so, the plaintiff must then show the defendant's proffered rationale is pretextual. *Hansen v. SkyWest Airlines*, 844 F.3d 914, 925 (10th Cir. 2016).

To establish a prima facie case, a plaintiff must show "(1) that she engaged in protected opposition to discrimination, (2) that a reasonable employee would have found the challenged action materially adverse, and (3) that a causal connection existed between the protected activity and the materially adverse action." *Wilkie*, 915 F.3d at 1267 (quotation marks and citation omitted). To prove a causal connection, a plaintiff must "'present evidence of circumstances that justify an inference of retaliatory motive.'" *Wilkie*, 915 F.3d at 1271 (quoting *Ward v. Jewell*, 772 F.3d 1199, 1203 (10th Cir. 2014)). A causal connection may be inferred if the protected conduct is closely followed by the adverse action. *Id.* at 1271. A gap of three months or more,

---

[7] Ms. Corio's also alleges other adverse actions in her complaint but relies on termination in her response brief. Thus, the Court finds that is the only adverse action at issue.

[8] Despite Tri City's reliance on this framework, it argues it has no liability because it has demonstrated it would have made the same decision in the absence of any unlawful motive, citing to *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989). The Court rejects this argument for two reasons. First, it is cursory and therefore waived. Next, even assuming it is not waived, the *Price Waterhouse* framework applies where there is direct evidence of retaliation, *Vaughn v. Epworth Villa*, 537 F.3d 1147, 1154 (10th Cir. 2008), which no party contends exists in this case.

15

standing along, is too long to support an inference of causation on its own. *Id.* at 1271. Instead, a plaintiff must present other evidence to establish causation. *Id.* at 1271.

If a plaintiff meets her burden, then the burden of production shifts to the defendant employer to show a legitimate non-discriminatory rationale for its adverse employment decision. If the defendant does so, the plaintiff must show pretext. Unlike evaluating a plaintiff's prima facie case, temporary proximity alone is insufficient to establish, or raise a genuine issue of material fact concerning, pretext. *DePaula v. Easter Seals El Mirador*, 859 F.3d 957, 976 (10th Cir. 2017). On the contrary, "'temporal proximity can support a finding of pretext only in combination with other evidence of pretext.'" *DePaula*, 859 F.3d at 976 (quoting *Lobato v. N.M. Env't Dep't,* 733 F.3d 1283, 1293 (10th Cir. 2013)).

Tri City's Motion relies on a failure to show causation and pretext. It is unclear to the Court, however, whether the causation arguments relate to Ms. Corio's prima facie case, to pretext, to both, or are conflated. Regardless, the Court assumes they are related to both.

Starting with Ms. Corio's prima facie case, the Court finds Ms. Corio has presented sufficient evidence for a rational juror to find a causal connection between her protected activity and her termination. Here, Ms. Corio complained of sexual harassment in late January 2017, filed her EEOC charge which was received by Mr. Welton on or about May 20, 2017, and was terminated on June 30, 2017, about six weeks after her last protected activity. As such, it is sufficient to create an inference of a causal connection.

Tri City, however, offers non-discriminatory rationales for its adverse employment decision, e.g., insubordination and failing to show up for work. Ms. Corio responds such reasons are pretextual. She does so in reliance on Tri City's varying explanation for her termination. For example, during her termination meeting, Mr. Welton gave no indication she was being

16

terminated for performance related issues. And, Tri City's reasons have expanded over time. In Tri City's responses to the EEOC, it stated Ms. Corio was terminated for insubordination, refusing to communicate with Mr. Welton, and failing to work the appropriate number of hours. Tri City's responses to discovery, however, gave the rationale that Ms. Corio had become very difficult to work with and tried to poison the attitude of other employees and management against Tri City.

In addition, Ms. Corio relies on evidence which, if believed, refutes Tri City's rationale. For example, Ms. Corio testified that she did not have a regular work schedule because she worked events for Tri City outside of regular business hours. And, further, that Ms. Corio did not encourage other employees to quit but, rather, assisted another employee when she asked for assistance with her resumé.

Finally, Ms. Corio relies on temporal proximity as discussed above. As stated, temporal proximity, standing alone, is insufficient. However, taking all the evidence and inferences to be drawn therefrom in a light most favorable to Ms. Corio, the Court funds there are material facts in dispute and insufficient evidence to support summary judgment on Ms. Corio's claim for retaliation.

### D. Breach of Contract

Ms. Corio alleges the parties agreed that if she provided Tri City with her work passwords and account details Tri City would pay her two weeks of vacation pay that she would have been entitled to if she had not been terminated on June 30, 2017.

"A contract is an agreement between two or more persons or entities. A contract consists of an offer and an acceptance of that offer, and must be supported by consideration. If any one of these three elements is missing, there is no contract." Colo. Jury Instr., Civil 30:1.

17

"'Consideration' is a benefit received or something given up as agreed upon between the parties." Colo. Jury Instr., Civil 30:7.

Tri City argues Ms. Corio provided Tri City no consideration because she would have provided the requested information anyway regardless of Tri City's promise to pay. Further, Tri City contends, Ms. Corio would have breached her duty of loyalty if she held the information "hostage" in exchange for vacation pay, citing to the Restatement (Second) of Agency § 387 (duty of loyalty). Ms. Corio responds that she worked expeditiously and provided the information over the July 4th holiday week, suffering some level of detriment sufficient to constitute consideration. In addition, Ms. Corio argues that any duty of loyalty did not create an affirmative obligation to provide the requested information to Tri City.

Under Colorado law, "[a]lthough a promise to perform an existing legal obligation does not constitute consideration, … if the existing legal duty which one promises to perform is either 'doubtful' or 'the subject of honest dispute,' it can constitute consideration." *DeJean v. United Airlines, Inc.*, 839 P.2d 1153, 1158 (Colo. 1992). In this case, Tri City cites to no legal authority to support its argument that Ms. Corio's actions fail to constitute consideration. And, based on the evidence, the Court is unable to find as a matter of law that Ms. Corio had an existing legal obligation to provide the information requested. Accordingly, Tri City's request for summary judgment on this claim is denied.

### E. Punitive Damages – Willful and Wanton Conduct

Tri City argues Ms. Corio has no evidence to support an award of punitive damages. Ms. Corio contends otherwise.

A Title VII plaintiff may recover punitive damages if her employer engaged in discriminatory practices "with malice or with reckless indifference to [her] federally protected

rights." 42 U.S.C. § 1981a(b)(1). "'Malice' or 'reckless indifference' [does] not require 'a showing of egregious or outrageous conduct,' but instead require[s] proof that the employer acted 'in the face of a perceived risk that its actions would violate federal law.'" *McInnis v. Fairfield Communities, Inc.*, 458 F.3d 1129, 1136 (10th Cir. 2006) (brackets added) (quoting *Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 535–36 (1999)).

Tri City relies on its argument that Mr. Welton took immediate action once he was informed about Mr. Goddard's actions. But, at issue is more than what happened when Ms. Corio made her January 2017 complaint, e.g., the alleged sexual harassment which preceded that complaint, and such issues have not been resolved on summary judgment in favor of Tri City. Thus, the facts on which the request for punitive damages is based are disputed and the Court is unable to conclude that, viewing all the evidence in a light in the most favorable to Ms. Corio, a rationale jury could not find reckless indifference. Moreover, the Court finds that "an award of punitive damages is not properly resolved on a motion for summary judgment unless liability on a claim or defense is uncontroverted." *Equal Employment Opportunity Comm'n v. Columbine Health Sys., Inc.*, No. 15-CV-01597-MSK-CBS, 2017 WL 4163354, at *6 (D. Colo. Sept. 19, 2017). After all, a request for punitive damages is neither a claim nor a defense. Instead, it is a remedy and one which arises once there is a determination of liability. This Court agrees with the *Columbine Health* court and "is disinclined to provide advisory rulings as to remedies that might be available to a prevailing plaintiff, when a trial will be required to determine liability in the first place." 2017 WL 4163354, at *6 (collecting cases). Accordingly, summary judgment is denied here.

## IV. CONCLUSION

Based on the foregoing, it is **ORDERED**

(1) That Defendant Tri City Cycle, Inc.'s Motion for Summary Judgment is **GRANTED in PART** and **DENIED in PART** as stated herein;

(2) That the Motion for Summary Judgment is **DENIED** as follows:

- (a) As to Plaintiff Corio's first claim for sexual harassment – hostile work environment for conduct which occurred on or before January 23, 2017;
- (b) As to Plaintiff Corio's third claim for retaliation based on the termination of her employment;
- (c) As to Plaintiff Corio's fourth claim for breach of contract; and
- (d) As to Plaintiff Corio's request for punitive damages; and

(3) That the Motion for Summary Judgment is **GRANTED** as follows:

- (a) As to Plaintiff Corio's first claim for sexual harassment – hostile work environment for any alleged conduct which occurred after January 23, 2017; and
- (b) As to Plaintiff Corio's second claim for sex discrimination.

DATED this 6th day of November, 2019.

BY THE COURT:

_____
RAYMOND P. MOORE
United States District Judge